UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

MARK PISCOPE,                                          :

                  Plaintiff,                       :           OPINION AND ORDER

          -against-                                :
                                        15 Civ. 8745 (GWG)
CAROLYN W. COLVIN,                             :

                 Defendant.                    :
----------------------------------------------------------------x
GABRIEL W. GORENSTEIN, United States Magistrate Judge

       Plaintiff Mark Piscope brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) to

obtain judicial review of the final decision of the Commissioner of Social Security denying his

claim for social security income and disability insurance benefits under the Social Security Act.

Both Piscope and the Commissioner have moved for judgment on the pleadings pursuant to Fed.

R. Civ. P. 12(c).[1]  For the reasons stated below, the Commissioner's motion is denied and

Piscope's motion for remand is granted.

I.      BACKGROUND

     A.    Piscope's Claim for Benefits and Procedural History

       Piscope filed applications for benefits on February 25, 2014, alleging disability beginning

on July 1, 2012.  See SSA Administrative Record, filed May 26, 2016 (Docket # 23) ("R."), at

144-55.  The Social Security Administration denied these applications on April 4, 2014.  R. 87-

---

[1] See Notice of Motion, filed May 3, 2016 (Docket # 20); Plaintiff's Memorandum of
Law in Support of Plaintiff's Motion for Judgment on the Pleadings, filed May 3, 2016 (Docket
# 21) ("Pl. Mem."); Notice of Cross-Motion, filed May 26, 2016 (Docket # 24); Memorandum of
Law in Support of the Defendant's Cross-Motion for Judgment on the Pleadings and in
Opposition to Plaintiff's Motion for Judgment on the Pleadings, filed May 26, 2016 (Docket
# 25) ("Comm. Mem."); Reply Memorandum of Law in Further Support of Plaintiff's Motion
for Judgment on the Pleadings and in Opposition to Defendant's Cross-Motion for Judgment on
the Pleadings, filed June 3, 2016 (Docket # 26).

94.  Piscope then filed a request for a hearing before an administrative law judge ("ALJ") to dispute the denial of his application.  R. 95-96.  On April 1, 2015, a hearing was held before ALJ Mark Solomon during which Piscope was represented by an attorney.  R. 19, 28.  Testimony was taken from vocational expert Yaakov Taitz.  R. 19.  On April 21, 2015, the ALJ issued a decision finding that Piscope was not disabled.  R. 19-28.  The Appeals Council denied Piscope's request for review on September 11, 2015, making the ALJ's determination the Commissioner's final decision.  R. 1-7.  Piscope filed the instant lawsuit to review that determination on November 6, 2015.  Complaint, filed Nov. 6, 2015 (Docket # 1).

      B.      <u>The ALJ's Decision</u>

On April 21, 2015, the ALJ ruled that Piscope had not been under a disability since July 1, 2012.  R. 28.  In his decision, the ALJ used the five-step sequential evaluation process described in the Social Security regulations for determining whether an individual is disabled.  R. 20-21; 20 C.F.R. 416.920(a).  First, the ALJ found that Piscope met the insured status requirement of the Social Security Act through December 31, 2017.  R. 21.  Second, he concluded that Piscope had "not engaged in substantial gainful activity since July 1, 2012."  <u>Id.</u> Third, the ALJ found that Piscope suffered from the following severe impairments: "HIV positive, PTSD, adjustment disorder with mixed anxiety and depressed mood."  <u>Id.</u>  He also determined that Piscope was impaired by a number of other, non-severe physical impairments.  R. 21-22.  Fourth, the ALJ found that Piscope did not have "an impairment or combination of impairments that me[t] or medically equal[ed] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  R. 22.  In reaching this determination, the ALJ first

reviewed whether the "'paragraph B' criteria" were satisfied.[2]  The ALJ stated that Piscope's medical records "show that [he] has no psychosis, has denied manic symptoms, has no episodes of decompensation, no audio or visual hallucinations, and no suicidal ideation."  R. 22.  The ALJ noted that Piscope provided contradictory statements to his primary doctor and to the consulting examiner regarding his difficulty falling asleep and loss of appetite.  Id.  The ALJ also highlighted that an examination by "the consulting examiner found mild impairments in attention and concentration, and mild impairments [to] memory."  Id.  Overall, the ALJ found that Piscope suffered only a "mild restriction" in activities of daily living, and "moderate difficulties" in social functioning, concentration, and persistence and pace.  Id.  He also found no evidence that Piscope experienced any episodes of decompensation of an extended duration.  Id.  The ALJ then reviewed whether the "paragraph C" criteria were satisfied, and similarly determined that the criteria had not been met.  R. 23.[3]

Fifth, the ALJ determined that Piscope held the residual functional capacity ("RFC") to perform the following:

---

[2] For mental disorders, the "Paragraph B" criteria "describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity."  20 C.F.R. Part 404, Subpt. P, App. 1 §12.00(A).  A claimant can satisfy the "Paragraph B" criteria by a showing of at least two of the following: "Marked restriction of activities of daily living"; "Marked difficulties in maintaining social functioning"; "Marked difficulties in maintaining concentration, persistence, or pace"; or "Repeated episodes of decompensation, each of extended duration."  See, e.g., id. §§ 12.04(B), 12.06(B).  "Marked" is defined as "more than moderate but less than extreme" and may arise "when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [a claimant's] ability to function independently, appropriately, effectively, and on a sustained basis."  Id. § 12.00(C).

[3] Paragraph C listing 12.04 refers to "Affective Disorders."  The showings necessary to demonstrate these disorders are described in detail by the regulations.  See 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.04.

light work as defined in 20 CFR 404.1567(b) and 416.967(b) except claimant can remember, understand and carry out simple instructions, make simple work-related decisions, maintain attention and concentration for rote work, maintain a regular schedule, and can perform a low stress job defined as one with only occasional close interpersonal contact with the general public.

Id.  In reaching this determination, although the ALJ implicitly found that Piscope's medically determinable impairments could reasonably be expected to cause the alleged symptoms, he found that Piscope's description of the intensity and limiting effect of the symptoms was not entirely credible.  R. 23-24.  First, the ALJ noted that although "it would be fully understandable that [Piscope] became depressed and anxious because of a loss of his business and the ensuing financial/living condition (being in [a] shelter)," his medical record makes "clear that his psychiatric problems (anxiety and depression) are due to lack of work, and not that his lack of work is due to psychiatric conditions."  R. 24.  Second, the ALJ highlighted that Piscope had normal cognition, no manic disorder, no audio or visual hallucinations, no episodes of decompensation, and that "nothing in the record suggests that [Piscope's] daily activities are substantially limited due to psychiatric issues."  Id.  The ALJ also determined that the medical records failed to support the physical limitations alleged.  Id.

With regard to the opinion evidence, the ALJ first reviewed the May 21, 2014, medical source statement of Dr. Joseph Olivieri, one of Piscope's treating physicians.  R. 25.  Dr. Olivieri had opined that Piscope was limited by fatigue and required two naps per day.  Id.  Dr. Olivieri also reported that Dr. Olivieri found that Piscope had "some difficulties in the office environment responding appropriately to others."  Id.  The ALJ granted "partial weight" to Dr. Olivieri's findings, due to his short-term treatment relationship with Piscope, as of May 21, 2014, and because his suggested limitations were not supported by his, or his predecessor Dr. Messihi's, treatment notes, which documented "few manifestations of HIV limitations," no side

4

effects of medication, only occasional fatigue, and an ability to "perform activities of daily living."  R. 25.

The ALJ then reviewed the opinion of treating psychiatrist Dr. Rybakov.  Id.  The ALJ noted that Dr. Rybakov found "marked to extreme limitations in all areas."  Id.  The ALJ, however, granted only "partial weight" to these findings, because they were "not supported by treatment notes or by [Piscope's] actual functioning."  Id.  The ALJ noted that notwithstanding Dr. Rybakov's findings, Piscope "is without any significant cognitive defects, psychosis, audio visual hallucinations, episodes of decompensation, or mania."  Id.  The ALJ also supported his determination by referencing Piscope's ability to perform activities of daily living, travel by himself, socialize, and the fact that he has a girlfriend.  Id.

Next, the ALJ reviewed Dr. Olivieri's November 5, 2014, medical source statement.  R. 25-26, 273.  In his report, Dr. Olivieri stated that Piscope had "repeated episodes of severe fatigue, wasting syndrome, and malaise, and also severe psychiatric limitations."  R. 25-26.  With regard to the physical limitations described, the ALJ granted only "limited weight" to this aspect of Dr. Olivieri's opinion.  Id.  He noted that the findings were both inconsistent with Dr. Olivieri's earlier finding that Piscope suffered no substantial limitations from HIV and completely unsupported by any treatment notes in the record.  Id.  With regard to the psychiatric limitations Dr. Olivieri described, the ALJ granted only "partial weight," because Dr. Olivieri was "not a psychiatrist."  R. 26.

The ALJ then reviewed the findings of consulting examiner Haruyo Fujiwaki.  R. 26.  Dr. Fujiwaki noted that Piscope "had only mild impairments on examination," and concluded that he "could follow and understand simple directions and instructions and perform simple tasks independently, and could maintain a regular schedule."  Id.  Nevertheless, Dr. Fujiwaki stated

that Piscope was "moderately impaired in maintaining attention and concentration, and had mild to moderate limitations for learning new tasks, performing complex tasks independently, and making appropriate decisions."  Id.  Dr. Fujiwaki also concluded that Piscope was "moderately impaired in relating adequately with others and appropriately dealing with stress."  Id.  Overall, the ALJ awarded only "partial weight" to Dr. Fujiwaki's findings, "as they are based on a one time examination, and the claimant only exhibited mild limits in the actual examination."  Id.

The ALJ determined that although Piscope was unable to perform any past relevant work, "there are jobs that exist in significant numbers in the national economy that [he] can perform."  R. 26.  In reaching this conclusion, the ALJ relied on the testimony of the vocational expert, who affirmed that "jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity."  R. 27.  Accordingly, the ALJ found that Piscope was not under a disability from July 1, 2012, through the date of his decision. R. 28.

II.   APPLICABLE LAW

A.   Scope of Judicial Review Under 42 U.S.C. §§ 405(g) and 1383(c)

A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (citation and quotation marks omitted); accord Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008); see also 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); id. § 1383(c)(3) ("The final determination of the Commissioner of Social Security . . . shall be subject to judicial review as provided in section 405(g) . . . .").  Substantial evidence is "'more

than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); accord Burgess, 537 F.3d at 127-28; Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

"Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (citation and internal quotation marks omitted).  Thus, "[i]f the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)); accord McIntyre v. Colvin, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.") (citation omitted).  The Second Circuit has characterized the "substantial evidence" standard as "a very deferential standard of review — even more so than the 'clearly erroneous' standard." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 447-48 (2d Cir. 2012) (per curiam) (citation omitted).  "The substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." Id. at 448 (emphasis in original) (citation and internal quotation marks omitted).  "The role of the reviewing court is therefore quite limited and substantial deference is to be afforded the Commissioner's decision." Johnson, 563 F. Supp. 2d at 454 (citation and internal quotation marks omitted).

      B.     <u>Standard Governing Evaluation of Disability Claims by the Agency</u>

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); <u>accord id.</u> § 1382c(a)(3)(A).  A person will be found to be disabled only if it is determined that his "impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  <u>Id.</u> §§ 423(d)(2)(A), 1382c(a)(3)(B).

To evaluate a claim of disability, the Commissioner is required to examine: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience."  <u>Mongeur v. Heckler</u>, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam) (citations omitted).

Regulations issued pursuant to the Social Security Act set forth a five-step process that the Commissioner must use in evaluating a disability claim.  <u>See</u> 20 C.F.R. § 404.1520(a)(4); <u>see also</u> <u>Burgess</u>, 537 F.3d at 120 (describing the five-step process).  First, the Commissioner must determine whether the claimant is currently engaged in any "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(I).  Second, if the claimant is not engaged in substantial gainful activity, the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment," <u>id.</u> § 404.1520(a)(4)(ii), which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work

activities," id. § 404.1520(c).  Third, if the claimant's impairment is severe and "meets or

equals" one of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1, and "meets the duration

requirement," the claimant must be found disabled.  Id. § 404.1520(a)(4)(iii).  Fourth, if the

claimant's impairment does not meet or equal one of the listed impairments, or does not meet the

duration requirement, the Commissioner must review the claimant's residual functional capacity

to determine if the claimant is able to do the work he or she has done in the past, i.e., "past

relevant work."  Id. § 404.1520(a)(4)(iv).  If the claimant is able to do such work, he or she is not

disabled.  Id.  Finally, if the claimant is unable to perform past relevant work, the Commissioner

must decide if the claimant's residual functional capacity, in addition to his or her age,

education, and work experience, permit the claimant to do other work.  Id. § 404.1520(a)(4)(v).

If the claimant cannot perform other work, he or she will be deemed disabled.  Id.  The claimant

bears the burden of proof on all of these steps except the final one — that is, proving that there is

other work the claimant can perform.  See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009)

(per curiam).

III.    DISCUSSION

        Piscope seeks reversal or remand of the ALJ's decision on the grounds that (1) the ALJ

failed to defer to the opinion of his treating physicians; (2) the ALJ failed to adequately develop

the administrative record; (3) the ALJ's RFC determination was not supported by substantial

evidence; and (4) that the Appeals Council erred in its review, or lack thereof, of the additional

evidence submitted by Piscope after his hearing before the ALJ.  Pl. Mem. at 11-19.  We begin

by discussing the ALJ's failure to develop the medical record and the "treating physician rule"

inasmuch as these issues alone provide a basis for remand.

        When an ALJ assesses a claimant's alleged disability, an ALJ must develop the

claimant's medical history for at least a twelve-month period.  See Shaw, 221 F.3d at 131;

accord Sims v. Apfel, 530 U.S. 103, 111 (2000) (ALJ has a "duty to investigate the facts and

develop the arguments both for and against granting benefits") (citation omitted); 42 U.S.C.

§ 423(d)(5)(B); 20 C.F.R. § 404.1512(d).  The governing statute provides that the ALJ "shall

make every reasonable effort to obtain from the individual's treating physician (or other treating

health care provider) all medical evidence, including diagnostic tests, necessary in order to

properly make" the disability determination.  42 U.S.C. § 423(d)(5)(B); accord 20 C.F.R.

§§ 404.1512(d), 416.912(d).  The ALJ's duty to develop the record remains the same regardless

of whether the claimant is represented by counsel.  Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir.

1999) (citing Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996)); accord Cancel v. Colvin, 2015 WL

865479, at *5 (S.D.N.Y. Mar. 2, 2015) (citing cases).  Where the ALJ fails to develop the record,

remand is appropriate.  Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir. 1999).

The obligation to develop the record is "enhanced when the disability in question is a

psychiatric impairment."  Lacava v. Astrue, 2012 WL 6621731, at *11 (S.D.N.Y. Nov. 27, 2012)

(citing 20 C.F.R. Part 404, Subpt. P, App. 1 § 12.00(E)); accord Gabrielsen v. Colvin, 2015 WL

4597548, at *4 (S.D.N.Y. July 30, 2015) (citing cases).  This "heightened duty" derives from the

fact that a claimant's mental illness may greatly impede an evaluator's assessment of a

claimant's ability to function in the workplace, thus necessitating a more thorough review.  See

Gabrielsen, 2015 WL 4597548, at *4 (noting that individuals with mental disorders often "adopt

a highly restricted and/or inflexible lifestyle within which they appear to function well")

(brackets, citations, and internal quotation marks omitted); accord SSR 85-15, 1985 WL 56857

(1985) (noting that the "highly restricted and inflexible lifestyles" of individuals with mental

disorders may cause difficulty meeting the requirements of even low-stress jobs).

"[I]nextricably linked to the duty to develop the record," <u>Lacava</u>, 2012 WL 6621731, at *13, is the so-called "treating physician rule," under which an ALJ must give "more weight to opinions" of a claimant's treating physician when determining if the claimant is disabled.  <u>See</u> 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  The rule directs the agency to give "controlling weight" to a treating physician's medical opinion as to the nature and severity of a claimant's impairments if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." <u>Id.</u> §§ 404.1527(c)(2), 416.927(c)(2).  If the ALJ does not give controlling weight to a treating physician's opinion, the ALJ must provide "good reasons" for the weight given to that opinion.  <u>Halloran v. Barnhart</u>, 362 F.3d 28, 32-33 (2d Cir. 2004) (citing <u>Schaal v. Apfel</u>, 134 F.3d 496, 505 (2d Cir. 1998)) (internal quotation marks omitted).  The regulations make clear that the agency "will always give good reasons . . . for the weight [they] give [a claimant's] treating source's opinion."  20 C.F.R. § 404.1527(c)(2).  Case law holds that "[f]ailure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand."  <u>Snell v. Apfel</u>, 177 F.3d 128, 133 (2d Cir. 1999) (citing <u>Schaal</u>, 134 F.3d at 505).

Here, we conclude that further development of the record is required.  Because of Piscope's complaints of mental impairments, the ALJ has an "enhanced" duty to develop the medical record.  <u>See</u> <u>Lacava</u>, 2012 WL 6621731, at *11 (citing 20 C.F.R. Part 404, Subpt. P, App. 1 § 12.00(E)).  The record contains only the opinions of Piscope's two treating physicians, Dr. Olivieri and Dr. Rybakov, as well as a report from consulting psychologist Dr. Haruyo

Fujiwaki and a report from state agency psychologist Dr. E. Kamin.[4]   The ALJ makes no

mention of Dr. Kamin's report in his opinion, let alone his findings.   Dr. Olivieri and Dr.

Rybakov opine that Piscope suffers from severe or significant impairments, while Dr. Fujiwaki

found moderate impairments in a number of areas.   In his review of the opinion evidence,

however, the ALJ granted only limited or partial weight to all of these medical opinions, noting

apparent inconsistencies, lack of support, or limited familiarity with the patient, as factors that

favored granting less than controlling weight in each case.   See, e.g., R. 25 (ALJ grants "partial

weight" to Dr. Rybakov's findings of "marked to extreme limitations" based on mental

impairments, because they were "not supported by treatment notes or by claimant's actual

functioning"); R. 26, 253-56 (ALJ grants "partial weight" to Dr. Fujiwaki's determination that

Piscope could "follow and understand simple directions . . . and perform simple tasks

independently," notwithstanding his many mild to moderate limitations, because the findings

were "based on a one time examination, and [Piscope] only exhibited mild limits in the actual

examination"); R. 25-26 (ALJ grants partial weight to Dr. Olivieri's assessment of "severe

psychiatric limitations" because he is "not a psychiatrist").

    We recognize that an ALJ is not required to re-contact a treating physician in every case

where the ALJ accords such an opinion less than controlling weight.   See 20 C.F.R.

§ 404.1520b(c)(1); accord Gabrielsen, 2015 WL 4597548, at *5-6 (describing how the act of re-

contacting the treating physician is an "option for correcting inconsistencies in the record")

(emphasis in original).   We also recognize that the regulations "afford an ALJ broad discretion in

determining and resolving inconsistencies" in the record.   Ashley v. Comm'r of Soc. Sec., 2014

---

[4] Various treatment notes from other physicians are present in the record.   See, e.g., R.
226.   They do not, however, provide an opinion regarding Piscope's functional capabilities.

WL 7409594, at *4 (N.D.N.Y. Dec. 30, 2014).  Nonetheless, the obligation to re-contact a treating physician still exists in some instances.  Gabrielsen, 2015 WL 4597548, at *6 (citing cases); accord Selian v. Astrue, 708 F.3d 409, 421 (2d Cir. 2013) (per curiam) (suggesting that the ALJ should have contacted a physician due to his "remarkably vague" opinion); Cancel, 2015 WL 865479, at *4-5 (remanding case where ALJ failed to further develop the record after discounting the opinions of claimant's three psychiatrists due to inconsistencies).  Given the conflicts in the medical evidence, and in light of the ALJ's decision to grant none of the medical opinions full weight, the record calls for enhancement through inquiries to the treating physicians or consultants that might shed light on the import of their opinions and the conflicts the ALJ identified.  For example, Dr. Olivieri twice states that Piscope would have "limitation in Office environment" due to elevated anxiety and depression, and secondary to "PTSD."   R. 262, 265.  Dr. Olivieri, however, never explains what he meant by this our how he determined it.  Thus, it should be clarified if at all possible before the ALJ chooses to discount it.  One of the reasons given by the ALJ for discounting Dr. Olivieri's opinion was that he had found no limitations on Piscope's activities of daily living.  R.25; see R. 265.  But, based on the heightened duty regarding mental illnesses discussed above, the ALJ should consider the fact that in cases of mental disorders, an ability to function in one environment does not necessarily translate to an ability to function in a work environment.

Also, additional efforts should be made with respect to the assessment of the opinion of Dr. Rybakov.  In his assessment of Dr. Rybakov's findings, the ALJ determined that only partial weight was warranted due to Piscope's lack of cognitive defects, psychosis, hallucinations, and his ability to engage in activities of daily living.  R. 25.  But as Dr. Rybakov noted, Piscope repeatedly presented with other severe symptoms such as anxiety, depression, paranoia, a hyper

13

vigilant state, as well as some erratic thoughts and behaviors.  See R. 284-99 (Piscope describes feelings of helplessness, hopelessness, as well as nightmares about computers and an "adverse reaction to phones and computers" in August 2014); R. 303-06 (Dr. Rybakov notes Piscope's depressed mood, poor sleep, severe anxiety, as well as paranoia, anger, irritability, crying spells, nightmares, and panic attacks in October 2014); R. 309-14 (in November 2014, Dr. Rybakov describes Piscope as agitated, impulsive, labile, very pressured, and very angry to the point where he was "almost jumping out of his skin").  These conditions, as described by Dr. Rybakov, were not mentioned by the ALJ.   Any further development of the record should thus be accompanied by a more detailed analysis of the weight to be given to Dr. Rybakov's opinion.  Obviously, on remand the ALJ should be sure to give "good reasons" if he elects to reject any treating physician's opinion and should fully explain those reasons.  Any evidence that was presented to the Appeals Council, R. 355-76, should form part of the record following remand.

Finally, at his administrative hearing, Piscope suggested that until recently, he had visited therapist "Valentina Kalish" on a weekly basis.  See R. 47.  On remand the ALJ should seek records of treatment from this individual as they may be able to provide insight regarding Piscope's mental condition.

The ALJ is free to develop the record in any other manner that the ALJ may deem helpful in addressing the issue of Piscope's impairments.

IV.   CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Docket # 24) is denied, and Piscope's motion for judgment on the pleadings (Docket # 20) is granted.  The case is remanded for further proceedings consistent with this opinion.   The Clerk is requested to enter judgment and to close this case.

14

Dated: August 19, 2016
      New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge